**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: April 1 2020**

Mary Ann Whipple
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 18-33456 |
| | ) | |
| Mark W. Klinger | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Mary Ann Whipple |

## MEMORANDUM OF DECISION REGARDING TRUSTEE'S MOTION FOR TURNOVER

This case is before the court on the Chapter 7 Trustee's Motion for Turnover [Doc. # 29] and Debtor's objection [Doc. # 30]. The issue presented is whether a year end bonus received by the Debtor after the commencement of his Chapter 7 case is property of the bankruptcy estate and subject to turnover to the Trustee. The court held an evidentiary hearing at which it heard Debtor's testimony and admitted documents into evidence. Debtor availed himself of the opportunity to file a post-petition brief arguing his position based on the hearing evidence. [Doc. # 56].

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings involving the turnover of property of the bankruptcy estate are core proceedings that this court may hear and decide under 28 U.S.C. § 157(b)(1) and (b)(2)(E).

## FACTUAL BACKGROUND

On November 3, 2018, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. [Ex. 1a]. When he filed his case Debtor was employed by Estabrook Assembly Services, Inc. in Berea, Ohio as a production manager, a position he had held since 1991. Debtor filed his schedules, statement

of financial affairs and other documents required to proceed with his case on November 26, 2018 (Employee Income Records, Doc. # 12), and November 27, 2018 (schedules and statement of financial affairs, Ex. 1b). His schedules and statement of financial affairs were all signed under penalties of perjury.

Debtor's employee income records showed the wage and benefit amounts he received from Estabrook within the 60 days before he filed his petition. *See* Fed. R. Bankr. P. 1007(b)(1)(E). As of November 2, 2018, Debtor's gross wage and benefit amounts totaled $55, 817.44. [Doc. # 12, p.10/10].

Debtor's Statement of Financial Affairs reported income to date of filing of $50,625.12, income for calendar year 2017 of $117,172.00 and income for calendar year 2016 of $116,065.20. [Ex. 1b, pp. 24-25/30]. His Schedule I: Your Income reported gross monthly income at filing from Estabrook of $5,127.42. [Ex.1b, p. 20/30]. In response to the inquiry on Schedule I: Your Income whether he "expect[s] an increase or decrease within the year after you file this form," Debtor checked the box for "No." [*Id.*].

On his Schedule A/B: Property, in response to the question whether he had any interests in "Trusts, equitable or future interests in property," Debtor checked the box "No." [Ex. 1b, p. 6/30, Q. 25]. In response to the question on his Schedule A/B whether there were "other amounts someone owes you, including 'unpaid wages,'" Debtor checked the box for "No." [Ex. 1b, p. 7/30, Q. 30]. In response to the question on his Schedule A/B whether there were "Other amounts someone owes you," including "unpaid wages," Debtor checked the box for "No." [Ex. 1b, p. 7/30, Q. 30]. In response to the question on his Schedule A/B whether he had "Other contingent and unliquidated claims of every nature," Debtor checked the box for "No." [Ex. 1b, p. 7/30, Q. 34]. In response to the question on his Schedule A/B whether he had "Any financial assets you did not already list," Debtor checked the box for "No." [Ex. 1b, p. 7/30, Q. 35]. In response to the question on his Schedule A/B "Do you have other property of any kind you did not already list," Debtor checked the box for "No." [Ex. 1b, p. 7/30, Q. 53].

At his December 13, 2018, Meeting of the Creditors, *see* 11 U.S.C. § 341(a), the Trustee asked Debtor about the disparity in his income relative to previous years. He explained under oath that it was because of bonuses received at the end of those previous years. He stated he had not received a bonus for 2018 and indicated he had no expectation of a future bonus. Debtor also explained that pursuant to a divorce decree he was expected to pay his ex-wife $5,000 or ½ of any bonus received. [*See* Ex. 4]. The Trustee directed Debtor to retain any bonus he received until entitlement of the estate to it could be determined. It appears that he did not do so.

By check dated December 31, 2018, Debtor received a gross bonus of $50,000.00 from Estabrook, which after taxes was a net amount of $32,425.00. [Ex. 6]. The parties stipulated that the net prorated

portion of the 2018 bonus amount to the date of filing of the petition to which the estate might be entitled, subject to the motion for turnover, is $25,547.54. [Ex. 6].

At the hearing, Debtor testified there was nothing in writing by Estabrook regarding bonuses. He said he was not certain how Estabrook determined bonuses. But he acknowledged that had he not been employed on the date the bonuses were paid, which was December 31, 2018, he would not have been entitled to receive one. When he filed his petition, Debtor did not know whether he would receive a bonus or what amount any bonus would be. He has never had a written employment contract with Estabrook. Nor has he ever been asked for any input about the fact or amount of any bonuses.

The Trustee sought information from Estabrook in discovery about the basis and history of bonus payments at the company. Exhibit 3 contains the response to the Trustee's subpoena, including a record of Debtor's bonus payments for the last 10 years. Jeff Tarr, Estabrook's owner and CEO, responded that:

> 2) **how were these bonus payments calculated?** Bonuses are "discretionary". Calculation factors are: the profits for the year, the longevity of the employee, W2 wages currently and previously paid and the position they hold within the company.

> and

> **In addition, please provide any written documentation that support how, when and if employee bonuses will be paid.** Because bonuses are discretionary, there is no documentation at this time regarding bonus payments.

[Ex. 3, p. 1, Q. 2 and p. 2].

For 2018, all 20 company employees received bonuses. [Ex. 3, p. 2, Qs. 5, 6]. Debtor had received bonuses in greatly varying amount each year over the 10 years from 2009 through 2018, with the gross amount of $50,000 in 2018 being the highest by far and $21,000 in 2009 being the lowest. [Ex. 3, p. 1, Q. 1].

## LAW AND ANALYSIS

Under 11 U.S.C. § 542(a), "an entity. . . in possession, custody, or control, during the case, of property that the trustee may use . . . under section 363 of this title . . . shall deliver to the trustee and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." An action to recover money or property generally requires an adversary proceeding. Fed. R. Bankr. 7001(1). Rule 7001(1) provides an exception if the proceeding, as is the case here, is brought by a trustee to compel the debtor to deliver property to the trustee. *Id.* Such relief can be sought by motion. *See* Fed. R. Bankr. P. 9014(a). And while a turnover action by motion is generally

3

appropriate only when the debtor has possession of the property of the estate in issue, when the property sought to be turned over is money, a debtor can be ordered to turnover an equivalent amount of cash. *E.g., In re Gentry*, 275 B.R. 747, 751 (Bankr. W.D. Va. 2001).

To prevail on a motion for turnover, the trustee must establish "(1) that the property is or was in the possession, custody or control of an entity during the pendency of the case, (2) that the property may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522; and (3) that the property has more than inconsequential value or benefit to the estate." *In re Bailey*, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008). The Trustee as the party seeking turnover bears the burden of proof by a preponderance of the evidence. *Spradlin v. Khouri Law Firm* (*In re Bruner*), 561 B.R. 397, 403 (B.A.P. 6th Cir. 2017).

Under 11 U.S.C. § 541(a)(1), "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." In *Segal v. Rochelle*, 382 U.S. 375 (1966), the Supreme Court opined "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Id*. at 379. While the scope of § 541(a) is expansive, the estate's rights to which the trustee succeeds can be no greater than those held by the debtor on the petition date. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, n.8 (1983); *Demczyk v. Mutual Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997).

Section 541(a)(1)'s phrase "as of the commencement of the case" operates as a temporal cutoff, "meaning that property interests that exist and belong to a debtor when the petition is filed are included within the bankruptcy estate, whereas property interests that the debtor acquires after the bankruptcy filing are not part of the estate, subject to certain exceptions stated in section 541." *In re Brown*, 601 B.R. 514, 517 (Bankr. C.D. Ill. 2019) (citation omitted). None of the statutory exceptions to the temporal cutoff "as of the commencement of the case" apply to the Estabrook bonus payment to Debtor. As here, uncertainty arises when a property interest has origins in pre-petition times but is not obtained or obtainable by a debtor until after a bankruptcy filing, perhaps subject to contingencies.

While the question of whether an interest is classified as property of the bankruptcy estate is one of federal law under the Bankruptcy Code, "[p]roperty interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 54-55 (1979). Unless a property interest arising under federal law is at issue, such as a federal income tax refund, for example, courts must look to state law to determine whether a debtor has a property interest and, if so, its nature and extent. In this case, Ohio law is the state law at issue. Debtor and his employer are both located in Ohio.

4

The burden upon the Trustee is to establish by a preponderance of the evidence that Debtor had a property interest in the bonus at the time he commenced his Chapter 7 case even though it was paid post-petition. There is no controlling Sixth Circuit Court of Appeals precedent on this issue interpreting Ohio law as applied to payments arising out of employment. The appellate case from this circuit that comes closest to addressing the issue in this case is *In re Booth*, 260 B.R. 281 (B.A.P. 6th Cir. 2001). Nor does the court find Ohio case law directly on point.

The debtor in *Booth* was employed by DaimlerChrysler and subject to a written profit-sharing plan under its collective bargaining agreement with the UAW. The issue was whether Debtor's interest in a payment made to him under that profit-sharing plan after he filed his bankruptcy case became property of the estate. Ohio law was also at issue in *Booth*. But the court in *Booth* did not spend much time in its opinion analyzing applicable Ohio law. Citing *Cleveland Trust Co. v. McQuade*, 106 Ohio App. 237, 248, 142 N.E.2d 249, 257 (1957), the court in *Booth* summarily concluded that "Debtor's interest in his employer's profit sharing [plan] constituted a contingent interest [under Ohio law] at the time of the petition."

The conclusion in *Booth* also appears premised on the concept that "under Ohio law, a contingent interest is fully alienable and may be attached by creditors." *Booth*, 260 B.R. at 285. It cites *Moore v. Foresman*, 172 Ohio St. 559, 179 N.E.2d 349, 353 (1957), for that proposition. But that citation is a dangling outlier that is not clearly applied. At the outset of the opinion in *Booth,* the court stated that "the program provides that the funds are non-assignable until they are distributed." *Booth,* 260 B.R. at 284. That fact is never reconciled with the *Moore v. Foresman* alienability and assignability citation.

The court in the case *In re Miller,* Case No. 10-15891, 2011 WL 3741846 at *3 (Bankr. N.D. Ohio. Aug. 29, 2011), applied *Booth* and that alienability concept to find that a post-petition bonus payment under an employee handbook was a contingent property interest under Ohio law that became property of the estate. The theory used implicitly in *Booth* and explicitly in *Miller* is that an assignment of wages is valid under Ohio law, with *Miller* citing an Ohio case from 1931.The bonus payment in *Miller* and the profit-sharing payment in *Booth* were thus deemed fully alienable and attachable contingent property interests under Ohio law at filing.

The problem is that assignments of wages are invalid under Ohio law unless ordered for support of a spouse or minor child. Ohio Revised Code § 1321.32 ("Assignment of wages invalid"); *see* Ohio Revised Code § 1321.33 ("Wage assignments for support of spouse or children"). Thus, if a characteristic of a contingent property interest under Ohio law is necessarily that it is fully alienable and attachable by

5

creditors, then the bonus payment in this case would fail as a contingent property interest on that basis alone.[1]

The *Cleveland Trust* case cited in *Booth* involves a probate court's interpretation of a trust agreement in the context of a dispute over application of the rule against perpetuities, which does not apply to vested interests ("a present fixed right of present or future enjoyment") but does apply to contingent interests. So the *Cleveland Trust* case therefore addresses what a contingent interest in property is under Ohio law.

The Ohio appellate court in *Cleveland Trust* described "'[a] contingent interest … [as] one in which there is no present fixed right of either present or future enjoyment; but in which a fixed right will arise in the future under certain specified contingencies.'" *Cleveland Trust Co.,* 106 Ohio App. at 248, 142 N.E.2d at 257 (1957) (citation omitted). "It is proper to say that a contingent interest is a future interest, and that a future interest is one which involves a postponement of the possession and enjoyment of property." *Id.* at 249. All three of the cases citing the headnote marking this discussion are bankruptcy cases, including *Booth* and *Miller.*

At filing, Debtor did not have a vested interest under Ohio law in a post-petition bonus payment because he had "no fixed right of present or future enjoyment." But did he have a contingent property interest in a bonus payment under Ohio law when he filed his case, the contingency being his continued employment at Estabrook?

At the hearing, Debtor acknowledged that he would not have received the bonus payment on December 31, 2018, if he had not still been in Estabrook's employ at that date. Thus, there was a contingency associated with the payment. Based on the *Cleveland Trust* case and this contingency, the court believes the  inquiry in this case is properly framed as: Did Debtor have a right when he filed his bankruptcy case to receive a bonus in the future, as long as he was still employed by Estabrook, the enjoyment of which right was being postponed?

There are competing facts relevant to that inquiry. The Trustee points to the uninterrupted history of end of the year bonus payments to Debtor as showing that he had a right to payment of the 2018 bonus when he filed his case. [Ex 3, p. 1, Q. 1]. Debtor argues that notwithstanding that history, the payment

---

[1] Most of the rest of what is in *Booth* is *dicta* that does not aid in deciding whether a property interest exists under Ohio law in a post-petition bonus payment. There is a lengthy discussion about whether contingent property interests can be property of the estate under § 541(a). That is almost a given. Rather the real issue in *Booth* is more fundamental: whether the debtor had a contingent property interest in the payment under Ohio law at the time he filed his Chapter 7 petition.

6

was completely discretionary in his employer and thus a mere expectancy that did not amount at filing to a contingent property interest under Ohio law.

The court agrees with Debtor that the bonus payment was completely discretionary in Estabrook. Debtor had no written employment contract with Estabrook. There is no employee handbook provision addressing bonuses and no written bonus or profit-sharing plan. There is no collective bargaining agreement establishing a bonus or profit-sharing plan. The Estabrook owner/CEO responded to the Trustee's discovery requests stating that there are no documents setting forth a bonus program and that it is entirely discretionary based on several factors whether an end of year bonus will be awarded and in what amount. These facts distinguish this case from cases like *Booth* and *Miller* where there were written programs in place when the debtors filed their bankruptcy cases.

The fact that Debtor received a bonus at the end of the calendar and fiscal year of Estabrook for at least 10 years running causes the court to wonder whether it was indeed completely discretionary. But while one might be tempted to think his long-time employer was just trying to do Debtor a solid in its discovery responses, the history of bonus payments is not enough to allow the court to find that the 2018 bonus was not discretionary in the employer as otherwise shown by the evidence, *see Vogel v. Palmer (In re Palmer)*, 57 B.R. 332, 335 (Bankr. W.D. Va. 1986) (no property right in bonus at filing even though employer had paid bonuses annually for the past fifty years). There is no basis in the record to dispute the credibility of Estabrook's discovery responses.

Another fact emphasizes for the court the wholly discretionary nature of the Estabrook bonus. The record shows that Debtor had the same understanding of the discretionary nature of bonus payments at Estabrook at a time removed from the present dispute. The subject of bonuses and their division as between Debtor and his former wife is expressly addressed in their divorce decree. [Ex. # 4, handwritten exhibit 1 to divorce decree thereto, paras. 3, 4 (p. 8/27)]. Until January 2020, Debtor agreed to pay his wife $5,000 or 50% of his net bonus each year. Tucked in that provision is the statement "[h]owever, husband does not have to pay wife $5,000.00 after January 2018, if he does not have a bonus from work." The decree was entered in 2011, long before this bankruptcy case was filed. It shows Debtor's understanding as reflected in his schedules and statement of affairs that he might not get a bonus in a particular year. Even in light of Debtor's history of receipt of year-end bonuses, this acknowledgment reinforces that any payment was understood to be wholly discretionary in Estabrook.

The court finds that the wholly discretionary nature of the bonus payment is determinative as to whether Debtor had a contingent property interest in any bonus under Ohio law when he filed his case. Because it was wholly discretionary, Debtor had at filing no future right to payment of a bonus that would

7

arise as long as he was still employed by Estabrook, the enjoyment of which was merely being postponed. He had a "contingent interest in nothing" and "nothing more than a hope or expectation that [he] would receive the payments." *In re Bronikowski*, 569 B.R. 48, 54 (Bankr. W.D.N.C. 2017) (quoting *Seaver v. Klein-Swanson (In re Klein-Swanson)*, 488 B.R. 628, 633 (B.A.P. 8th Cir. 2013)). Even setting aside the odd alienability detour, when the debtor in *Booth* filed his Chapter 7 case he had a right under the written DaimlerChrysler profit sharing plan the enjoyment of which was merely being postponed under the terms of the plan. There was no discretionary aspect to the profit-sharing plan payment in *Booth*. The plan's contingencies of continued employment and a profit did not change that debtor had a property right at filing, the enjoyment of which was merely postponed under the terms of his employer's profit-sharing plan.[2] There are a number of cases from other jurisdictions that also find the wholly discretionary nature of a post-petition payment determinative and decide that the payment is not property of the estate. Debtor has cited a number of those cases in his post-petition brief. As the issue here is one of Ohio law, those cases are ultimately of limited persuasive utility in this case.

As the court finds that Debtor did not have a contingent or other property interest in a bonus payment from his employer when he filed his bankruptcy petition, the court also need not consider in this case whether that interest is "sufficiently rooted in the pre-bankruptcy past" to bring it within the estate to the extent such an inquiry is not one premised under Ohio law. *See In Re Brown*, 601 B.R. at 519-20 ("This court agrees with the view expressed by these courts that *Segal* should not be interpreted as setting forth a federal standard to be layered on to the property of the estate analysis under section 541, where property interests arising under state law are at issue. The common law "sufficiently rooted test" has been superceded by section 541(a)(1)'s requirement of a 'legal; or equitable interest…as of the commencement of the case.").

Having considered the evidence and the arguments of the parties, based on the foregoing reasons and authorities, the court finds that the Trustee's motion for turnover must be denied. At filing, Debtor had no property interest under Ohio law, contingent or otherwise, in a discretionary post-petition bonus payment from his employer. As a result, the bonus that Debtor was paid post-petition on December 31, 2018, is not property of his bankruptcy estate under § 541(a). In turn the bonus payment or the value of

---

[2] This court would decide *Miller* differently because of the apparently discretionary aspect of the bonus payment in that case as set forth in the employee handbook. Other courts have decided that bonuses paid post-petition under the Lincoln Electric plan at issue in *Miller* were not property of the estate at filing. *E.g. Palmer*, 57 B.R. at 332. Likewise, the court finds that *Booth's* distinction of the case *Sharp v. Dery*, 253 B.R. 204 (E.D. Mich. 2000), which did involve a wholly discretionary payment, and the focus on enforceability are unhelpful *dicta. Cf. Mazzitti v. Garden City Group, Inc.*, Case No. 06AP-850, 2007 WL 1847688 at * 13 (Ohio Ct. App. June 28, 2007) (cites approvingly cases involving bonuses to which employees were determined to be not legally entitled due to their discretionary nature).

8

any part thereof did not become property that the Trustee could recover and use for the benefit of the estate. She is therefore not entitled to entry of a turnover order for even the stipulated amount of the post-petition bonus payment. The court will enter a separate order denying the Trustee's motion for turnover.in accordance with this Memorandum of Decision.

# # #